IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JENNIFER BIGGS                                                                    PLAINTIFF

v.                                    Civil No. 11-3066

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Jennifer Biggs, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.      Procedural Background:

The plaintiff filed her application for SSI on October 8, 2008, alleging an onset date of March 2 2002, due to chiari malformation[1], anxiety disorder, and lower back problems.  Tr. 131-135, 153, 161-162 189-197, 202-208, 209, 210.  The Commissioner denied Plaintiff's application initially and on reconsideration.  Tr. 75-80, 131-137.  An administrative hearing was held on December 1, 2009.  Tr. 23-66.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 33 years old and possessed a high school education.  Tr. 27.  She had past relevant work experience as a data entry clerk during the last fifteen years, although she spent most of the relevant time period as a homemaker.  Tr. 29-31, 154, 171, 211.

---

[1]Chiari Malformation is a condition in which the brain tissue protrudes into the spinal canal.  Mayo Foundation for Medical Education and Research, *Chiari Malformation*, www.mayoclinic.com (Last visited August 20, 2012).  It occurs when part of the skull is abnormally small or misshape, pressing on the brain and forcing it downward.  *Id.*  Symptoms include headaches, neck pain, an unsteady gait, poor hand coordination, numbness and tingling of the hands and feet, dizziness, difficulty swallowing, visual problems, and slurred speech.  *Id.*

On May 19, 2010, the ALJ found Plaintiff's Chiari malformation, degenerative disk disease ("DDD"), obesity, headaches, attention deficit hyperactivity disorder ("ADHD"), anxiety, bipolar disorder, and depression were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 11.  After partially discrediting Plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work that does not involve sustained driving; climbing scaffolds, ladders, or ropes; and, work near unprotected heights and/or dangerous equipment and requires only occasional climbing of ramps and stairs, stooping, bending, crouching, crawling, kneeling, and balancing. Tr. 12.  With regard to her mental impairments, the ALJ concluded Plaintiff could perform routine, repetitive work in which superficial contact is incidental to work with the public and co-workers and such work has non-complex, simple instructions and is learned and performed by rote with few variables, little required judgment, and concrete, direct, and specific supervision.  Tr. 12. With the assistance of a vocational expert, the ALJ determined Plaintiff could perform work as a poultry eviscerator and production line assembler.  Tr. 16.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on June 6, 2011.  Tr. 1-5.  Subsequently, plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF Nos. 6, 7.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

## II.   __Applicable Law:__

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it

adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record

contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the

court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome, or because the court would have decided the case differently.  *Haley v.

Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the findings

of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.

2000).

It is well-established that a claimant for Social Security disability benefits has the burden of

proving her disability by establishing a physical or mental disability that has lasted at least one year and

that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d

1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines

"physical or mental impairment" as "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her

disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process

to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity

since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or

combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings;

(4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the

claimant is able to perform other work in the national economy given his age, education, and experience.

*See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider

the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.**   **Discussion:**

Plaintiff contends that the ALJ erred by substituting ALJ's without holding a supplemental hearing, failing to properly consider her subjective complaints and all of her impairments in combination, concluding that she retained the RFC to perform a significant range of light work, failing to evaluate her obesity in accordance with Social Security Ruling ("SSR") 02-1p, and failing to undertake the function-by-function analysis of Plaintiff's restrictions as is required by SSR's 96-8p and 96-7p.

**A.**   **Substitution of ALJ Shepherd:**

The Administrative hearing was held before ALJ Smith, but the opinion was issued by ALJ Shepherd.  Plaintiff contends that a supplemental hearing was necessary because observation of the witnesses is a critical element in a credibility determination.  And, without a supplemental hearing, ALJ Shepherd did not have the opportunity to make such observations.  However, "[a] change in personnel occurring during the course of or at the close of an administrative hearing does not as such give rise to constitutional repugnance in a decision or order made by the administrative tribunal on the basis of the previous hearing.*" Gamble–Skogmo v. FTC*, 211 F.2d 106, 112 (8th Cir. 1954) (citations omitted); *see also Twin City Milk Producers Ass'n v. McNutt*, 122 F.2d 564, 569 (8th Cir. 1941) ("It is well settled that a change of personnel in an administrative agency or tribunal during the course of a hearing, or at any time before the issuance of a final order on the hearing, does not invalidate the order.").

Plaintiff also is unable to show the substitution of ALJ Shepherd prejudiced her. *See Briones–Sanchez v. Heinauer*, 319 F.3d 324, 327 (8th Cir. 2003) ("In order to succeed on a due process claim, an alien must prove that he was actually prejudiced by the lack of process afforded to him."); *Southard v. Sullivan*, 966 F.2d 1459 (8th Cir. 1992) (per curiam) (unpublished opinion) (reasoning the claimant did not show prejudice from the Department of Health and Human Services' alleged failure to

4

provide notice).  A review of ALJ's opinion makes clear that he properly discharged his official duties and reviewed the testimony from the administrative hearing.  *See United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *United States v. Ahrens*, 530 F.2d 781, 785–86 (8th Cir. 1976) (applying the presumption of regularity to conclude an IRS employee properly recorded tax information on notice provided to the claimant); *Cupples Co. Mfrs. v. N.L.R.B.*, 103 F.2d 953, 958 (8th Cir. 1939) (applying the presumption of regularity to conclude members of the National Labor Relations Board sufficiently considered all evidence before making a decision).  More importantly, however, his conclusion that Plaintiff was not "disabled" relied predominately upon inconsistencies in the medical record as opposed to credibility determinations based upon witness testimony, thus diminishing the need to observe the testimony personally.  *See Gamble–Skogmo, Inc.*, 211 F.2d at 115 (noting de novo review by substituted examiner would have been unnecessary had the decision not relied upon credibility determinations requiring seeing and hearing witnesses' testimony).  For these reasons, we conclude the substitution of ALJ Shepherd for ALJ Smith did not violate Plaintiff's due process rights.  *Wilburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010).

### B.     Subjective Complaints and Combination of Impairments:

The ALJ was required to consider all the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of his pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of her medication; and, 5) function restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  *Id.*  As the Eighth Circuit has observed, "Our touchstone

5

is that [a claimant's] cerdibilty is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Likewise, the ALJ must consider a claimant's impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v. Sullivan,* 922 F.2d 480, 484 (8th Cir. 1991) (citing *Johnson v. Secretary of Health & Human Servs.,* 872 F.2d 810, 812 (8th Cir. 1989)). In the present case, therefore, the ALJ was obligated to consider the combined effect of [Plaintiff]'s physical and mental impairments. *Id.* at 484 *(*citing *Reinhart v. Secretary of Health & Human* Servs., 733 F.2d 571, 573 (8th Cir. 1984) and *Wroblewski v. Califano*, 609 F.2d 908, 914 (8th Cir. 1979)). It should be noted that Plaintiff alleged numerous impairments. Under these circumstances, the Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel,* 222 F.3d 496, 501 (8th Cir. 2000); *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (where ALJ found that claimant did not have impairment or combination equaling listing-level impairment and referred to evidence as a whole, ALJ properly considered combined effect of impairments).

The ALJ noted that the medical records from Plaintiff's treating physicians showed that her chiari malformation, headaches, and chronic back and neck pain were effectively treated with conservative measures with no evidence of symptom progression. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). An MRI of her cervical spine conducted in February 2008 showed focal disk protrusion at the C5-6 level with no significant spinal stenosis or neuroforaminal encroachment. In April 2008, Dr. David Brown, a neurologist noted that Plaintiff's chiari malformation did not require surgery, and assessed Plaintiff with chronic daily headaches of uncertain etiology, for which he prescribed Topamax Tr. 263-265. At a follow-up visit in May 2008, Plaintiff reported that her headaches had improved "quite a bit." Tr. 280. An MRI of her cervical spine taken at this time showed

C5-6 level disc disease with only mild bulging disc and slight kyphosis of the cervical spine, and "very minimal" chiari malformation, which Dr. Brown considered to be within "normal limits." Tr. 470. Chiropractic notes from May 2008, also indicate that Plaintiff's progress was better than expected with regard to treatment of her lower back and neck pain. Tr. 221-224. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). And, Plaintiff reported improvement from a series of facet nerve block injections administered by Dr. Jared Ennis between February 2009, through November 2009 for degenerative cervical facet spondylosis and cervical spine pain. Tr. 296-305, 569-577. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). In fact, she reported both pain relief and improvement in her level of activity following the injections. Tr. 302-305, 572-573.

Further, in June 2009, Plaintiff reported bilateral calf pain after roping a steer, and she also reported the ability to care for her dog, care for children, care for personal hygiene, prepare simple meals daily, do the laundry, wash the dishes, perform general household clean up chores, drive, ride in a car, go outside, shop for groceries and toiletries, read, play on the internet, listen to music, visit friends, play cards, and attend school activities and functions. Tr. 52, 163-167, 566-567. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, these are not the daily activities one would expect a disabled person to be able to perform.

7

With respect to Plaintiff's mental limitations, the ALJ noted that the medical evidence of record indicates Plaintiff's anxiety, bipolar disorder, and ADHD were also effectively treated with conservative measures, with no evidence of episodes of decompensation. In April 2009, Dr. Thomas Lawson administered a battery of psychological tests and concluded that her anxiety, depression, and inattention ratings fell within the clinical range. Further, her hyperactivity impulsivity ratings fell within the normal to borderline range with bipolar ratings in the clinical range. He recommended behavioral and counseling strategies and consultation with her physician for possible medication management, beginning with the bipolar concerns. Tr. 289-292. In May 2009, Dr. Kathleen Wong found that Plaintiff had no auditory or visual hallucinations, and no current suicidal or homicidal ideation. Tr. 459-462. Additionally, her thought processes were "mostly" logical and sequential with fair judgment and limited insight. Tr. 461. She diagnosed Plaintiff with bipolar disorder, PTSD, and ADHD, and assessed her with a Global Assessment of Functioning ("GAF") score of 51, which is indicative of only moderate symptomology. Tr. 461. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). And, repeated exams with treating doctor, Dr. Steve Shrum revealed an appropriate affect with normal speech and thought content/perception, although she carried a diagnosis of ADHD. Tr. 242-243, 560-561, 564-565, 566-567.

In October 2009, notes from Vista Health Outpatient Services revealed reports of mood swings, anxiety, depression, poor concentration, impulsiveness, risk taking behaviors, and fatigue. Tr. 332-339. Medical staff found Plaintiff fully oriented with normal affect, a cooperative attitude, intact thought processes, appropriate thought content, and normal judgment, insight, and memory. She was alert with no indication of suicidality. Tr. 334. They recommended individual and marital therapy, but there is no evidence of a regular course of treatment by any mental health professional. Tr. 332. And, by November 2009, Plaintiff reported adequate mood management, and it was noted that she should return on an as

needed basis.  Tr. 580, 581.  Further, we note that Plaintiff remained able to visit friends and attend her children's school activities and functions.  Tr. 163-167.

There is also contradictory evidence as to why Plaintiff quit work and stopped attending college in 2008.  And, "[t]he ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole."  *Gray v. Apfel,* 192 F.3d 799, 803 (8th Cir.1999).  Plaintiff testified that she had to take Xanax daily to attend college and that it was extremely difficult for her to maintain attention and concentration.  Tr. 57.  However, she told Dr. Lawson that she quit school after passing out due to her pain.  Tr. 459-462.  And, Plaintiff also admitted that she stopped working to take care of her disabled daughter, who suffers from cerebral palsy, rather than due to her own disability, but later told an examiner at Vista Health that she had lost her job due to extreme fear/anxiety/panic.  Tr. 153.  *Pearsall v. Massanari*, 274 F.3d 1211, 1218(8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability." (citation omitted)).  These inconsistencies distract from her credibility.  Accordingly, we feel that the ALJ properly evaluated Plaintiff's subjective complaints and their combined effects.

C.    **RFC Assessment:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Lewis v. Barnhart,*

9

353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  *Id*.

Contrary to Plaintiff's assertion, in the instant case the ALJ conducted a thorough analysis of the evidence of record, including the objective medical evidence and other evidence, as well as Plaintiff's subjective complaints.  On November 11, 2008, Dr. David Hicks reviewed Plaintiff's medical records and concluded that Plaintiff could perform a full range of light work.  Tr. 268-275.  However, considering all of the evidence, including the limiting effects of her obesity, the ALJ limited her to light work that did not involve sustained driving; climbing scaffolds, ladders, or ropes; and, work near unprotected heights and/or dangerous equipment and requires only occasional climbing of ramps and stairs, stooping, bending, crouching, crawling, kneeling, and balancing.

Further, due to Plaintiff's ADHD, anxiety, bipolar disorder, and depression, the ALJ determined Plaintiff could perform routine, repetitive work in which superficial contact is incidental to work with the public and co-workers and such work has non-complex, simple instructions and is learned and performed by rote with few variables, little required judgment, and concrete, direct, and specific supervision.  After reviewing the medical evidence indicating that Plaintiff's condition was responsive to medication and therapy, that her mood swings were under adequate control, that she and her husband were involved in an open marriage[2], and that she was able to visit with friends and attend her children's school related activities and events, we find substantial evidence to support the ALJ's determination in this regard.

We note that the ALJ specifically addressed the weight given to the examining, non-examining, and treating physicians, and the Court finds that the RFC took into consideration all of the limitations which were supported by the record.

---

[2]Plaintiff has indicated that she and her husband have an open marriage, allowing for each of them to have intimate relations with other people.  Tr. 581.  We find that her ability to be around others in this capacity calls into question her reports of anxiety that prevents her from being around strangers and/or crowds.

**D.**     **Obesity:**

SSR 02-1p provides guidance for evaluating obesity.  It recognizes that obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried.  However, an individual may have limitations in any of the exertional functions such as *sitting,* standing, walking, lifting, carrying, pushing, and pulling.  It may also affect the individual's ability to do postural activities, such as climb, balance, stoop, and crouch.  SSR 02-1p further explains that the combined effects of obesity with other impairments may be greater than might be expected without obesity providing "[f]or example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone."

In the present case, the ALJ noted that Plaintiff's obesity clearly contributed to the severity of her condition and resulted in limited mobility and increased health risk, highlighting the medical evidence documenting her morbid obesity and BMI of 47.  He also concluded that her obesity was a severe impairment and incorporated it into his residual functional capacity assessment, prohibiting her from climbing scaffolds, ladders, or ropes, and limiting her to only occasional climbing ramps and stairs, stooping, bending, crouching, crawling, kneeling, and balancing.  And, after reviewing the evidence, while we do agree that Plaintiff's physical limitations were exacerbated by her obesity, we can find no evidence to indicate that her obesity prevented her from performing the range of light work identified by the ALJ.

**E.**     **Function-by-function Analysis:**

Plaintiff also claims that the ALJ failed to undertake a "function by function" analysis as is required by SSR's 96-8p and 96-7p.  SSR 96-8p requires a function-by-function analysis of the claimant's restrictions.  The RFC assessment must not only identify the individual's functional limitations or restrictions, but also assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.

11

SSR 96-7p states that "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

Plaintiff states that Judge Shepherd merely made broad unsupportive statements discrediting her pain and its limitations stating her ". . . degree of pain relief seeking behavior and treatment is not indicative of a degree of pain that would limit activities beyond the scope of the residual functional capacity as determined in this decision."  We do not agree.  As discussed above, the ALJ evaluated the objective evidence coupled with her Plaintiff's subjective complaints and based his RFC assessment on substantial evidence.  And. the fact that Plaintiff's condition was treated via conservative measures, rather than requiring surgical intervention, is certainly a fact that the ALJ may take into consideration. *See Smith*, 987 F.2d at 1374 (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

The Eighth Circuit has held that an ALJ can meet the requirements of SSR 96-8p without making explicit findings with respect to every possible functional limitation. *See Depover v. Barnhart*, 349 F.3d 653, 567 (8th Cir. 2003) (holding no violation of SSR 96-8p where ALJ made explicit findings in the residual functional capacity assessment, despite not making explicit findings with respect to sitting, standing and walking).  Although not defined in the opinion, the regulations provide that light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  20 C.F.R. § 404.1567(b) (1990).  He then goes on to conclude that, based on all of the

12

evidence of record, she can not perform work involving sustained driving; climbing scaffolds, ladders, or ropes and, work near unprotected heights and/or dangerous equipment; can only occasionally occasional climb ramps and stairs, stoop, bend, crouch, crawl, kneel, and balance; and could perform routine, repetitive work in which superficial contact is incidental to work with the public and co-workers and such work has non-complex, simple instructions and is learned and performed by rote with few variables, little required judgment, and concrete, direct, and specific supervision.  As such, we find no merit in Plaintiff's argument that the ALJ failed to appropriately conduct a function-by-function analysis.

**V.**     **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 23rd day of August 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)